1

2

3

4                          IN THE UNITED STATES DISTRICT COURT

5

6                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    CITY OF BERKELEY, MAYOR, AND                No. C 14-04916 WHA
     MEMBERS OF THE CITY COUNCIL OF THE          No. C 14-05179 WHA
9    CITY OF BERKELEY,

10              Plaintiffs,

11    v.                                         **ORDER DISMISSING CASE
                                                 AS MOOT**
12   UNITED STATES POSTAL SERVICE,
     PATRICK R. DONAHOE, TOM A. SAMRA,
13   AND DIANA ALVARADO,

14              Defendants.
     _____
15
     NATIONAL TRUST FOR HISTORIC
16   PRESERVATION IN THE UNITED STATES

17              Plaintiff,

18    v.

19   UNITED STATES POSTAL SERVICE;
     ESTATE, SERVICE PACIFIC REGION,
20
                Defendants.
21   _____/

22                                  **INTRODUCTION**

23        In these related NEPA and NHPA actions seeking injunctive and declaratory relief,

24   defendants move to dismiss under Rule 12(b).  For the reasons stated below, defendants' motions

25   are **GRANTED**.

26                                    **STATEMENT**

27        This litigation relates to the potential sale of the Berkeley Main Post Office, located at

28   2000 Allston Way, Berkeley, CA, 94704.  Plaintiffs are the City of Berkeley (along with its

     mayor and members of the city counsel) and the National Trust for Historic Preservation, a

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1   nonprofit organization.  Defendants are the United States Postal Service and several of its

2   employees.

3        In the spring of 2012, the USPS issued an advisory to its postal patrons that it intended to

4   sell the Berkeley Main Post Office building.  Over the next two years, the USPS took various

5   steps to sell the building, such as issuing a notice of its intent to relocate, officially listing the

6   building for sale, and actively pursuing bids for the property.  USPS's broker actively marketed

7   the property, listed it for sale, and distributed various marketing materials.  The USPS also took

8   preliminary steps to comply with the National Environmental Policy Act and the National

9   Historic Preservation Act (City of Berkeley First Amd. Compl. ¶¶ 1, 13).

10       In the fall of 2014, the USPS posted on its website that it was "in contract" with respect to

11  the Berkeley Main Post Office.  Upon learning of the potential sale, plaintiff City of Berkeley

12  filed a motion for a TRO and a preliminary injunction to enjoin the pending sale.  The

13  undersigned judge granted the TRO (Dkt. No. 8).  Two weeks later, plaintiff National Trust for

14  Historic Preservation filed its own lawsuit against the USPS attempting to block the pending sale,

15  and the cases were related.  Both original complaints sought declaratory and injunctive relief

16  blocking the pending sale and alleged that the USPS violated NEPA by declaring a categorical

17  exclusion in secret, and in an arbitrary and capricious manner.  Plaintiffs further alleged that

18  defendants violated the NHPA in an arbitrary and capricious manner by failing to complete

19  Section 106 review prior to entering into a contract for sale and by relying on an inadequate

20  covenant.  Plaintiffs argued that by entering into the sales agreement, the USPS had completed a

21  final and reviewable agency action (City of Berkeley First Amd. Compl. ¶¶ 1, 39).

22       Before plaintiffs' motion for a preliminary injunction could be ruled on, the potential

23  buyer, Hudson McDonald, LLC, backed out of the deal.  The proposed deal included a five-year

24  leaseback provision, such that the USPS would maintain its retail services in the current post

25  office building while it searched for a relocation site.  As a consequence, no pending sale exists

26  and the property is not currently even listed for sale.  The USPS stated that it has not decided

27  when, if ever, to re-list the Berkeley Main Post Office for sale (Lowe Decl. ¶ 4).

28

United States District Court
For the Northern District of California

Nevertheless, plaintiffs allege that the cancellation of the pending sale does not render their case moot and have amended their complaints.  Plaintiffs' amended complaints seek declaratory and injunctive relief that would prevent the USPS from moving forward with any potential post office sale and/or relocation until it has rescinded the following three actions:  (1) the "Final Determination Regarding Relocation of Retail Services in Berkeley, California," which the USPS issued in 2013 and stated that the USPS "has not yet identified the potential relocation site and thus it is premature to evaluate potential impacts" (USPS Exh. 1 at 6); (2) the USPS's Record of Environmental Consideration, which determined that a sale of the post office building was categorically excluded from NEPA review; and (3) a letter to the Advisory Council on Historic Preservation from the USPS stating that it had concluded the Section 106 process (City of Berkeley First Amd. Compl. ¶¶ 1, 57).

Now, defendants move to dismiss under Rules 12(b)(1) and 12(b)(6).  Defendants argue that because Hudson McDonald terminated the pending sales agreement, plaintiffs' case is moot. Additionally, defendants contend that plaintiffs lack standing to bring a private right of action under the Administrative Procedures Act.

At oral argument, the undersigned judge requested that the USPS inform the Court as to whether it would rescind the document titled "Final Determination Regarding Relocation of Retail Services in Berkeley, California."  In response, the USPS stated (Dkt. No. 54) (emphasis added):

> The answer is yes.  The 2013 Final Determination was superseded — now having no further force an [sic] effect — by the September 2014 decision to maintain services in the Berkeley Main Post Office.  *Should the Postal Service at some future time decide again that it would be in the best interest of its operations to relocate retail services, the Postal Service will reinitiate the process pursuant to 39 C.F.R. 241.4.*

This order follows full briefing and oral argument.

**ANALYSIS**

Under Rule 12(b)(1), the "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."  *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir.

1988)).  Moreover, in reviewing agency decisions, "federal courts lack power to make a decision unless the plaintiff has suffered an injury in fact, traceable to the challenged action, and likely to be redressed by a favorable decision."  *Snake River Farmers' Ass'n v. Dep't of Labor*, 9 F.3d 792, 795 (9th Cir. 1993).

When a plaintiff seeks declaratory relief, as here, the "test for mootness . . . is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174–75 (9th Cir. 2002) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

This order holds that the case is moot because (1) Hudson McDonald terminated the sales agreement and (2) the USPS has rescinded the 2013 final determination, such that if the USPS later decides to relocate, it will go through the process all over again under 39 C.F.R. 241.4.

Moreover, in late 2014, the City of Berkeley passed new zoning restrictions on the district in which the Berkeley Main Post Office resides.  The zoning overlay goes so far as to permit only the following new uses in the Civic Center District: libraries; judicial courts; museums; parks and playgrounds; public safety and emergency services; government agencies and institutions; public schools/educational facilities; non-profit cultural, arts, environmental, community service and historic organizations; live performance theatre; and a public market (Berkeley City Ordinance No. 7,370-N.S., Chapter 23E.98).  This will substantially shrink the possible universe of purchasers or alternative users for the building, making it ever more unlikely that the controversy will ever rise from the dead.

Our court of appeals has definitively held that:  "A case or controversy exists justifying declaratory relief only when 'the challenged government activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'"  *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1990) (quoting *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122 (1974)).

**United States District Court**
For the Northern District of California

4

United States District Court

For the Northern District of California

1    The three agency actions that plaintiffs still challenge, now that the pending sale has

2   evaporated and the relocation decision has been rescined, are intermediate steps that do not bind

3   the USPS to anything.  Any injury plaintiffs could conceivably suffer in the future turns on

4   several unknown contingencies, such as:  (a) an actual decision to re-list the property; (b) the

5   existence of a contract binding the USPS to a sale and/or a contract binding the USPS to

6   relocation; and (c) that the terms of that future sale and/or relocation, and the actions taken by the

7   USPS leading up to them, actually violate NEPA and the NHPA.  These hypothetical events are

8   "too uncertain, and too contingent upon the [defendant's] discretion, to permit declaratory

9   adjudication predicated on prejudice to [plaintiff's] existing interests."  *Headwaters*, 893 F.2d at

10  1015–16.

11   In *Nome Eskimo Community. v. Babbitt*, 67 F.3d 813 (9th Cir. 1995), our court of appeals

12  reviewed similar facts to those in our case.  In *Nome*, the United States Department of the Interior

13  announced that it planned to accept bids for the right to lease areas of the Norton Sound in Alaska

14  for gold dredging.  The plaintiffs then sued for an injunction enjoining the leases and for a

15  declaratory judgment establishing plaintiffs' rights to the land at issue.  Before the district court

16  could rule on the injunction, the government announced that it had received no bids for the

17  property, that no lease was pending, and that the property was no longer listed for lease.  Our

18  court of appeals affirmed the district court's dismissal of the case as moot.   In doing so, our court

19  of appeals stated:  "Plaintiffs have suggested that, even absent a continuing case or controversy,

20  we should provide a declaration of their rights in the Norton Sound area.  However, a declaratory

21  judgment may not be used to secure judicial determination of moot questions."  *Id*. at 816.

22   Plaintiffs argue that their case is not moot, despite the fact that the original buyer backed

23  out, the property is not currently listed for sale, and the USPS rescinded the final determination

24  regarding relocation.  Instead, plaintiffs argue that harm is imminent and that a present

25  controversy exists for which effective relief can be granted.  Plaintiffs contend that the following

26  three actions, undertaken by defendants, created a cognizable injury:  (1) the "Final

27  Determination Regarding Relocation of Retail Services in Berkeley, California," which the USPS

28  issued in 2013 and stated that the USPS "has not yet identified the potential relocation site and

United States District Court

For the Northern District of California

thus it is premature to evaluate potential impacts" (USPS Exh. 1 at 6); (2) the USPS's Record of Environmental Consideration, which determined that a sale of the post office building was categorically excluded from NEPA review; and (3) a letter sent to the Advisory Council on Historic Preservation by the USPS stating that it had concluded the Section 106 process.  In doing so, plaintiffs rely on the long-held exception to the mootness doctrine, that cases which present issues that are "capable of repetition, yet evading review" are not moot.  *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

The central decision plaintiffs rely on is *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974).  In *Super Tire*, a group of New Jersey employers challenged a state statute requiring employers to pay benefits to striking workers, arguing that the statute interfered with the policy of free collective bargaining expressed in the Labor Management Relations Act.  Before the case could be tried, the parties settled the labor dispute and the strike ended.  Despite this, the Supreme Court held that the case was not moot and that declaratory relief could be granted.  The Supreme Court reasoned (*id*. at 123–24) (emphasis added):

> [T]he challenged governmental action has not ceased.  The New Jersey governmental action does not rest on the distant contingencies of another strike and the discretionary act of an official.  Rather, New Jersey has declared positively that able-bodied striking workers who are engaged, individually and collectively in an economic dispute with their employer are eligible for economic benefits.  *This policy is fixed and definite.  It is not contingent upon executive discretion.  Employees know that if they go out on strike, public funds are available.*  The petitioners' claim is that this eligibility affects the collective-bargaining relationship, both in the context of a live labor dispute when a collective-bargaining agreement is in process of formulation, and in the ongoing collective relationship, so that the economic balance between labor and management, carefully formulated and preserved by Congress in the federal labor statutes, is altered by the State's beneficent policy toward strikers.  It cannot be doubted that the availability of state welfare assistance for striking workers in New Jersey pervades every work stoppage, affects every existing collective-bargaining agreement, and is a factor lurking in the background of every incipient labor contract.  The question, of course, is whether Congress, explicitly or implicitly, has ruled out such assistance in its calculus of laws regulating labor-management disputes.  In this sense petitioners allege a colorable claim of injury from an extant and fixed policy directive of the State of New Jersey.  That claim deserves a hearing.

**United States District Court**
For the Northern District of California

1    Our facts are distinguishable from those in *Super Tire* in several respects.  Primarily,

2   *Super Tire* found the policy at issue was fixed and definite, did not rest on future contingencies,

3   and had an impact on the economic balance between labor and management.  In our case, on the

4   other hand, any potential injury to plaintiffs *does* rest on indefinite future contingencies.  For

5   plaintiffs to be injured, the USPS must re-list the property for sale, actually enter into a sale

6   agreement with a buyer, and must go through the procedure laid out in 39 C.F.R. 241.4 all over

7   again.  Moreover, as stated above, *Super Tire* stressed that the challenged policy created a

8   cognizable injury because its very presence affected the ongoing labor relationship between the

9   parties.  In our case, there is no analogous relationship or injury that would keep the case alive.

10    Lastly, *Super Tire* concluded that because "the great majority of economic strikes do not

11   last long enough for complete judicial review of the controversies they engender" they fall into

12   the "capable of repetition, yet evading review" exception.  *Id*. at 125–26 (quoting *Southern Pac.*,

13   219 U.S. at 515).  Our case does not fall into this exception.  The facts that prompted plaintiffs'

14   original suit — an actual pending sale — are capable of repetition.  They would not, however,

15   evade review.  This exception is typically applied to actions that have a short duration.  In *Super*

16   *Tire*, the exception applied to a labor strike.  In the environmental context, this exception

17   typically applies to short-term policies or leases.  *See, e.g., Alaska Cent. for the Env't v. U.S.*

18   *Forest Serv.*, 189 F.3d 851, 854–55 (9th Cir. 1999).

19    In our situation, however, if the USPS enters into a sale agreement for the property, and if

20   plaintiffs contend that future agreement violates NEPA and the NHPA, then that case would not

21   evade review.  In two recent cases that had similar facts to ours, in which the federal government

22   attempted to sell a building and a group of plaintiffs sued under NEPA and the NHPA, courts

23   granted preliminary injunctions and were able to review the cases on the merits.  *See Nat'l Post*

24   *Office Collaborate v. Donahoe*, No. 13–1406, 2014 WL 6686691 (D. Conn. Nov. 26, 2014)

25   (Judge Janet Arterton); *Comm. for the Pres. of the Seattle Fed. Reserve Bank Bldg. v. Fed.*

26   *Reserve Bank of San Francisco*, No. 08–1700, 2010 WL 1138407 (W.D. Wash. Mar. 19, 2010)

27   (Judge Robert Lasnik).  Similarly, in our case, when there was an actual pending sale, plaintiffs'

28   request for a TRO was granted and the case would have been reviewed on the merits, had the

United States District Court

For the Northern District of California

1    pending sale not fallen through.  Thus, our situation does not fall into the "capable of repetition,

2    yet evading review" exception to the mootness doctrine.

3            Plaintiffs next argue that courts rarely dismiss NEPA and NHPA challenges based on

4    mootness grounds.  Each of the decisions plaintiffs rely upon, however, is distinguishable from

5    our facts.  In *Tyler v. Cisneros*, 136 F.3d 603 (9th Cir. 1998), our court of appeals held that the

6    plaintiffs' NEPA and NHPA claims were not moot.  In *Tyler*, however, the Department of

7    Housing and Urban Development had already agreed to the parameters of the housing project at

8    issue with a local developer and had already disbursed the funds for the project.  The challenged

9    project did not depend on hypotheticals or contingencies.  Our court of appeals concluded that

10   plaintiffs' claims were not moot despite the fact that HUD had already distributed the funds for

11   the specified project.  Thus, the plaintiffs had suffered a cognizable injury.

12           In four other decisions plaintiffs rely on, substantial portions of the projects at issue had

13   already been completed when the plaintiffs filed suit.  Those decisions all held that although the

14   challenged projects had largely been constructed, plaintiffs could still assert their NEPA and

15   NHPA claims.  *See Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F. 2d 585 (9th Cir.

16   1981); *West v. Sec'y of Transp.*, 206 F.3d 920 (9th Cir. 2000); *Earth Island Inst. v. U.S. Forest

17   Serv.*, 442 F.3d 1147 (9th Cir. 2006); *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v.

18   Brown*, 948 F.2d 1436 (5th Cir. 1991).  In our case, however, substantial portions of the

19   challenged project have not been completed.  In fact, no real and definite challenged project

20   exists; it is merely hypothetical.  No specific architectural plans have been drawn up, no money

21   has changed hands, and the USPS is not contractually bound to do anything.  Frankly, in light of

22   the new zoning ordinance, it seems highly unlikely that this controversy will ever recur in the

23   foreseeable future.

24           Lastly, plaintiffs argue that their case is not moot, and is ripe for review, based on the

25   Supreme Court's statement in *Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726, 737

26   (1998).  There, the Supreme Court stated that "a person with standing who is injured by a failure

27   to comply with the NEPA procedure may complain of that failure at the time the failure takes

28   place, for the claim can never get riper."  Plaintiffs rely on two decisions interpreting *Ohio*

8

United States District Court
For the Northern District of California

1   *Forestry* to allow challenges to projects under the NHPA and NEPA.  *See Dugong v. Gates*, 543

2   F. Supp. 2d 1082, 1097 (N.D. Cal. 2008) (Judge Marilyn Hall Patel); *Kern v. BLM*, 284 F.3d

3   1062, 1070–71 (9th Cir. 2002).

4          These decisions are distinguishable as well.  In *Dugong*, the Department of Defense had

5   already approved specific plans for the construction of a military air station in Japan.  Thus, the

6   decision reasoned, plaintiffs' NHPA claim was ripe for adjudication.  *Dugong* stressed that the

7   claim was ripe because "the 2006 Roadmap is not an abstract proposal.  It sets forth detailed

8   specifications regarding the location and configuration of the replacement military facility.  Two

9   runways aligned in a V-shape will be built largely on landfill adjacent to the existing Camp

10  Schwab, but will also extend more than a mile into the waters of Oura and Henoka Bays."

11  *Dugong*, 543 F. Supp. 2d at 1097.  Similarly, in *Kern*, the plaintiffs challenged a specific

12  environmental impact statement regarding proposed timber sales in the Coos Bay District of

13  Oregon, arguing that it did not adequately take into account the potential effects on a pathogenic

14  root fungus that grew on the trees.  Relying on that environmental impact statement, defendants

15  entered into eight specific timber sales and had concrete plans in place to allow logging to go

16  forward.  Thus, *Kern* found that there existed "an imminence of harm to the plaintiffs and a

17  completeness of action by the agency."  *Kern*, 284 F.3d at 1070.

18                                           **CONCLUSION**

19         For the reasons stated above, defendants' motions to dismiss are **GRANTED**, subject to the

20  following condition.  Defendants must provide plaintiffs with written notice at least 42 calendar

21  days in advance of the closing of any future sale of the Berkeley Main Post Office or any final

22  determination to relocate retail post office services.

23

24         **IT IS SO ORDERED.**

25

26  Dated: April 14, 2015.

    _____
    WILLIAM ALSUP
27  UNITED STATES DISTRICT JUDGE

28